UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GAYNAITH HAYWOOD,

|                                             | Civil Action No.:       |
| Plaintiff,                                  | **COMPLAINT**           |
| v.                                          | **JURY TRIAL DEMANDED** |
| KEYBANK NATIONAL ASSOCIATION d/b/a KEYBANK; STEVEN CARTER; and KENNETH RASKIN, | |
| Defendants.                                 |                         |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff GAYNAITH HAYWOOD ("Plaintiff"), by and through his attorneys, VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief from KEYBANK NATIONAL ASSOCIATION ("KeyBank"); STEVEN CARTER ("Carter"); and KENNETH RASKIN ("Raskin") (collectively, "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq*. ("§ 1981"); the New York State Human Rights Law ("NYSHRL"), and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.     This is an action brought by Plaintiff against Defendants for hostile work environment, race discrimination, failure to promote, and unlawful termination, in retaliation for Plaintiff engaging in protected activities, in violation of  Title VII, § 1981, and the NYSHRL.

2.     KeyBank is the principal subsidiary of KeyCorp, a publicly traded Bank Holding Corporation ("BHC") (NYSE ticker symbol "KEY") under the Bank Holding Corporation Act. Upon information and belief, KeyCorp and KeyBank are each organized in the State of Ohio, and

headquartered in Cleveland.  KeyBank provides a wide range of retail and commercial banking and other services in over twelve hundred full-service retail banking branches in fifteen different states, including New York State.  KeyBank had an average of 15,700 full-time equivalent employees for 2016, the last year for which such data is publically available.

3.     KeyBank employed Plaintiff within Westchester County, New York from 2015 to 2016.  Plaintiff began his employment for KeyBank as a Personal Banker and was later promoted to Business Banker.  Throughout his employment with KeyBank, Plaintiff had an outstanding performance track record and earned several awards.  Despite this success, KeyBank subjected Plaintiff, a Black male, to a racially hostile work environment, where his supervisor called him derogatory terms such as "sexual chocolate" and forced him to endure simulated whippings.

4.     When Plaintiff complained of the racially hostile treatment to KeyBank's Human Resources ("HR") department, he was transferred to a less lucrative branch, with diminished opportunities to earn compensation, and stripped of his clientele.  Plaintiff then complained to HR, again, concerning the retaliatory transfer, but was ignored.  Subsequently, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the New York State Division of Human Rights.

5.     Shortly after filing the Charge, Plaintiff was unlawfully terminated in retaliation for engaging in protected activity by complaining to HR and by filing the Charge.

6.     Plaintiff alleges that he is entitled to recover: (i) back pay, (ii) front pay (iii) emotional damages, (iv) compensatory and punitive damages, (v) interest, (vi) attorney fees and costs, pursuant to Title VII, § 1981, the NYSHRL and (vii) and such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief: (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) under Title VII, codified at 42 U.S.C. §§ 2000e *et seq.*, as amended  and (iv) and under § 1981, codified at 42 U.S.C. §§ 1981 *et seq.*, as amended.

8.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

10.     Plaintiff is a person who has been aggrieved by Defendants' actions.  He is and has been, at all relevant times, an African-American (alternatively, "Black") male citizen of the United States of America and is a resident of the state of New York.

11.     Plaintiff has at all relevant time been a covered "employee" pursuant to Title VII and the NYSHRL.

12.     KeyBank is a wholly owned subsidiary of KeyCorp, a publically traded company.

13.    KeyBank's principal place of business is located at 127 Public Square, Cleveland, Ohio 44114.

14.    KeyBank transacted and continues to transact business within the State of New York by owning and operating multiple bank branches within the counties of New York and Westchester and by employing persons within said counties.

15.    KeyBank employs more than one hundred (100) employees.

16.    At all relevant times, KeyBank has been a covered "employer" pursuant to Title VII and the NYSHRL.

17.    KeyBank is a private employer pursuant to § 1981.

18.    Carter is a White individual who, upon information and belief, resides in the State of New York.

19.    Carter was formerly employed by KeyBank as a Branch Manager.

20.    Carter was Plaintiff's former Branch Manager.

21.    Throughout the relevant time period, Carter had the ability to make personnel decisions over branch employees such as hiring, firing, promotions, transfers, compensation decisions, scheduling, assignment of job duties, opening and closing the branch.

22.    Raskin is a White individual who, upon information and belief, resides in the District of Colombia. Throughout the relevant time period, Raskin resided in the State of New York.

23.    Throughout the relevant time period, Raskin was employed by KeyBank as an Area Leader.

24.    Throughout the relevant time period, Raskin was Plaintiff's Area Leader.

25.    Raskin is a current employee of KeyBank.

26.     Throughout the relevant time period, Raskin had the ability to make personnel decisions over Branch Managers and branch employees within his area such as hiring, firing, promotions, transfers, compensation decisions, scheduling, assignment of job duties, opening and closing the branch.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

27.     Plaintiff has timely filed a Charge of Discrimination alleging, inter alia, hostile work environment and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("DHR").

28.     On September 5, 2017, Plaintiff's DHR complaint was dismissed on the grounds of administrative convenience.

29.     Plaintiff received his Notice of Right to Sue letter from the EEOC within ninety (90) days prior to the filing of this complaint.

## STATEMENT OF FACTS

30.     KeyBank owns and operates numerous bank branches throughout the country, including multiple branches located within the New York State counties of New York and Westchester.

31.     In or around August 2015, Plaintiff began employment for KeyBank as a Personal Banker.

32.     Throughout the relevant time period, Plaintiff was employed by KeyBank, first at its branch located in Cortlandt Manor, New York and, subsequently, after he was transferred, at its branch located in New Rochelle, New York.

33.     During his tenure as a Personal Banker, Plaintiff received several awards for his work ethic, competence, and dedication, including the "Fast Start Award" for December 2015.  In

March 2016 Plaintiff also received a merit-based compensation increase within the first six (6) months of his employment with KeyBank.  Furthermore, throughout his tenure with KeyBank, Plaintiff had a positive performance record.  Prior to complaining to HR about the racially charged hostile work environment and filing a Charge with the EEOC, Plaintiff never was subjected to any verbal or written warnings or any other disciplinary actions.

34.    Despite his outstanding track record with KeyBank, Plaintiff was subjected to a racially hostile work environment.

35.    Beginning in or around October 2015, and continuing up to March 2016, Carter subjected Plaintiff to continuous racial harassment and humiliation.

36.    For example, Carter made the following derogatory comments to Plaintiff, in words or substance:

- Black people mated with one another as means of producing better workers for slave labor . . . and that is why Blacks are normally in better shape than Whites, because they're made to work.

- How long do Black people feel that White people should have to feel guilty for slavery and when would you guys get over it?

- I'm surprised that Ken (referring to Raskin), hired another Black guy, it must be Affirmative Action.

- Look! He's actually darker and blacker than you [in reference to another Black employee].

- Why do Black women have so many children that they are forced to go on welfare?

- You can take my leftovers home as part of my reparations for slavery.

37.    Carter would also consistently refer to Plaintiff as "sexual chocolate" or "Hersey bar" in front of Plaintiff's coworkers and their superior, Raskin.  When Carter called Plaintiff

"sexual chocolate" in the presence of Raskin, Raskin humiliated Plaintiff by laughing along with Carter, at Plaintiff's expense.

38.     Furthermore, during the relevant time period, Raskin employed only one (1) Black Branch Manager in his area.

39.     On one occasion, Carter stated to Plaintiff's female coworker Jennifer Matteson that she must understand why Plaintiff was unfamiliar with the Oakley™ brand of sunglasses, brand because her boyfriend was Black.

40.     On another occasion, Carter was recounting an experience he had in Gary, Indiana. He stated to Plaintiff that the town was full of very scary looking Black people sitting on their porches.  He then proceeded to state that following an internet based demographic search of Gary, Indiana, he could now understand where the derogatory term "porch monkey" (in reference to Blacks) had originated from.

41.     Carter also made animated, racially hostile gestures to Plaintiff such as using a cellphone application in the presence of Plaintiff, which made a whipping sound followed by a subsequent screaming sound, when the cellphone was flicked in Plaintiff's direction.  Carter would frequently make a mock whip-cracking motion with the cellphone, directed at Plaintiff, to trigger the whipping and screaming sounds, in order to suggest to Plaintiff that Carter was whipping Plaintiff.

42.     On one such occasion, Carter stated to Plaintiff that he would proudly post on his online Facebook account that he "whipped a big black man today at work."

43.     Moreover, after one whipping incident, Mr. Himmelstein stated to Plaintiff that he should have his "Black card" revoked and that if HR inquired into the incident, he would lie in favor of Carter by denying that the whipping incident occurred.

44.     In addition to the racially hostile work environment Carter subjected Plaintiff to, Carter recommended that Plaintiff not be promoted to Eastchester's Branch Manager because Plaintiff did not display "managerial behaviors."

45.     Plaintiff was highly qualified for the Branch Manager promotion. As a Business Banker Plaintiff frequently performed the duties of a Branch Manager. For example, Carter and Raskin often requested that Plaintiff handle Carter's clients as he was unable to.

46.     Plaintiff was denied this promotion of the basis of his race.

47.     As a result of the promotion denial, Plaintiff did not receive a promotional pay increase.

48.     On March 11, 2016 and March 17, 2016, Plaintiff complained to HR about the racially hostile work environment to which he was being continually subjected.  These complaints were made in writing.

49.     That same day, Raskin, at the request of Carter, transferred Plaintiff from KeyBank's Cortlandt Manor bank branch to the New Rochelle branch and changed his position from Personal Banker to Business Banker. Moreover, in the position of Business Banker, Plaintiff was subject to more stringent sales goals and restrictions.

50.      The Cortlandt Manor branch is located in the middle of an affluent area, where residents have high levels of disposable income.  In contrast, the New Rochelle branch was located in an area that has much less disposable income and was a lesser performing branch, which had recently terminated its entire staff of bankers.  Accordingly, in his position as a Business Banker, who received commissions on business activity originating in the community served by the branch to which he was assigned, the transfer represented a significant decrease in economic opportunity.

51.     The opportunity for Plaintiff to earn commission-based compensation was significantly diminished as a result of his transfer from the Cortlandt Manor branch to the New Rochelle branch.

52.     At the time of the transfer, Plaintiff had approximately twenty-five million ($25,000,000) in accounts in his intake pipeline for the Cortlandt Manor Branch.  As a result of being transferred to the New Rochelle branch, approximately 45 minutes away, Plaintiff was subjected to diminished opportunity to earn compensation by serving the clients associated with the accounts in his intake pipeline, closing those transactions, and earning associated commissions and bonuses.

53.     Plaintiff's transfer to the New Rochelle branch was closely followed by an increase in the sales quotas to which Plaintiff was held accountable.  By moving Plaintiff to the New Rochelle branch, depriving Plaintiff of ready access to his existing client base, and increasing Plaintiff's sales quotas, KeyBank set Plaintiff up to fail so they could terminate him in retaliation for engaging in protected activity.

54.     Plaintiff's transfer to New Rochelle was retaliation for making his complaints of a racially hostile work environment to HR, and for filing the Charge.

55.     Three (3) of Plaintiff's coworkers, Ms. Eribelka Remirez, Ms. Jennifer Matteson, and Mr. Jason Himmelstein, stated to Plaintiff that both Carter and Raskin wanted to transfer Plaintiff out of Cortlandt Manor because he complained to HR regarding the hostile work environment to which he was subjected.

56.     On April 4, 2016, Plaintiff complained to HR regarding the retaliatory transfer and about the incident, described above, in which Raskin laughing at Plaintiff in response to Carter's racially hostile comments, directed at Plaintiff.

57.     Plaintiff also complained to HR that Raskin condoned Carter's unlawful behavior, since Raskin failed to take any remedial actions despite being physically present during much of Carter's harassment of Plaintiff, including, as examples, when Carter stated: "I bet their illegal," when referring to Hispanic and Asian clients, and when Carter made offensive comments towards handicapped clients.

58.     On April 28, 2016, KeyBank told Plaintiff, without providing *any* factual support for its conclusory statements, that it had determined that Raskin had neither engaged in, nor condoned, unlawful discriminatory behavior in the workplace.

59.     On July 5, 2016, Ms. Allyn Crone ("Ms. Crone"), KeyBank's market operations leader, targeted Plaintiff and another employee who complained about Carter's unlawful behavior, for internal investigation regarding time card usage.  Ms. Crone stated that the investigation was started at the suggestion of Plaintiff's former supervisor, Ms. Rosaline Lawrence ("Ms. Lawrence").

60.     In concluding the investigation, KeyBank claimed that Plaintiff entered time into the recording system that he did not actually work and placed him on a disciplinary "Incident Report."

61.     Notably, Ms. Lawrence, as Plaintiff's supervisor, had personally approved all of Plaintiff's timecard submissions.  Ms. Lawrence ultimately told Plaintiff at a later date, *after she left employment at KeyBank*, that she had *never* suggested or requested any investigation of Plaintiff's time card, and did not believe that there were any discrepancies or other improprieties in Plaintiff's time records.

62.     On July 12, 2016, Plaintiff informed HR that Raskin was refusing to respond to customer complaints presented to him by Plaintiff.

63.     Plaintiff also informed HR that his colleagues were never interviewed regarding Raskin's unlawful behavior, and that he was falsely investigated regarding his time card.

64.     On or Around July 15, 2016, Plaintiff filed a Charge of Discrimination (Charge No.: 15-GB-0603924) with the EEOC alleging the hostile and retaliatory work environment that KeyBank fostered, as described above.

65.     On August 5, 2016, Raskin and Ms. Crone placed Plaintiff on a "Performance Improvement Plan" ("PIP"). KeyBank used PIPs as a disciplinary tool to document employees' performance deficiencies as part of a policy of progressive discipline.

66.     Plaintiff was purportedly placed on a PIP for failing to meet his performance goals and for attendance violations.  As described above, KeyBank's purported reason for placing Plaintiff on the PIP was pretext, and real motive was to retaliate against Plaintiff for making his complaints to HR and for filing the EEOC Charge.

67.     On August 22, 2016, Plaintiff filed a verified complaint with the DHR regarding the unlawful conduct described above.  DHR made a finding that it had jurisdiction over the complaint, and made a Probable Cause Finding to the effect that probable cause existed to believe that KeyBank engaged in unlawful discriminatory practices.

68.     On September 1, 2016, Plaintiff informally requested a leave of absence from HR due to the severe emotional distress that he was suffering as a result of the hostile work environment at KeyBank.  Plaintiff's request for leave was approved.

69.     While out on leave, HR mailed a letter to Plaintiff demanding that he make a formal request for leave, or to return to work, the following day or his job would be deemed abandoned due to resignation

70.     Plaintiff, who was not given any notice that his leave was unauthorized prior to taking the leave (which, he was told, was in fact authorized), contacted HR in response to the letter to formally request leave.

71.     One (1) month after making his "authorized" formal request for leave, KeyBank *denied* Plaintiff's request for leave because he allegedly did not provide proper documentation. Notably, KeyBank never informed Plaintiff that he purportedly submitted improper documentation prior to denying Plaintiff's request for leave.

72.     A few days after his "authorized" request for leave was denied, KeyBank mailed Plaintiff a termination later.

73.     The stated reason for Plaintiff's termination was job abandonment.

74.     Plaintiff never abandoned his job, and never resigned.

75.     KeyBank's termination of Plaintiff was in retaliation for his complaints to HR concerning the unlawful conduct of Carter and Raskin, and for filing a Charge of Discrimination with the EEOC and a cross-filed complaint with DHR.

76.     After Plaintiff's termination, Raskin was transferred to an Area Leader position in an even more lucrative business community served by KeyBank.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.
(AGAINST KEYBANK FOR RETALIATION)**

77.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

78.     Plaintiff was subjected to a racially charged, hostile work environment.

79.     Plaintiff engaged in protected activity by complaining internally to HR about the racially hostile and retaliatory work environment which he was subjected to by Defendants.

80.     Plaintiff engaged in protected activity by filing a Charge of Discrimination with the EEOC and a cross-filed complaint with DHR regarding the racially hostile and retaliatory work environment which he was subjected to by Defendants.

81.     KeyBank had actual knowledge that Plaintiff engaged in protected activities.

82.     In direct retaliation for Plaintiff engaging in protected activities, Keybank terminated him.

83.     KeyBank's conduct was in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

84.     Plaintiff's request for relief are set forth below.

## AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.*
### (AGAINST KEYBANK FOR RETALIATION)

85.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

86.     Plaintiff engaged in a protected activity by complaining internally about the racially hostile and retaliatory work environment Defendants subjected him to.

87.     Plaintiff engaged in a protected activity by filing a Charge of Discrimination with the EEOC and a complaint with DHR regarding the racially hostile and retaliatory work environment Defendants subjected him to.

88.     KeyBank had actual knowledge that Plaintiff engaged in protected activities.

89.     In direct retaliation for Plaintiff engaging in protected activities, KeyBank terminated him.

90.     KeyBank's conduct was in violation of Title VII of the Civil Rights Act of 1964, as amended, Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.*

91.     Plaintiff's request for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
**The New York State Human Rights Law**
**(AGAINST KEYBANK FOR RETAILATION)**

92.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

93.     Plaintiff engaged in a protected activity by complaining internally about the racially hostile and retaliatory work environment Defendants subjected him to.

94.     Plaintiff engaged in a protected activity by filing a Charge of Discrimination with the EEOC and a complaint with DHR regarding the racially hostile and retaliatory work environment Defendants subjected him to.

95.     Defendants had actual knowledge that Plaintiff engaged in protected activities.

96.     In direct retaliation for Plaintiff engaging in protected activities, KeyBank terminated him.

97.     Defendants' conduct was in violation of The New York Human Rights Law.

98.     Plaintiff's request for relief are set forth below.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
**The Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.***
**(AGAINST KEYBANK AND CARTER FOR HOSTILE WORK ENVIROMENT)**

99.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

100.    Plaintiff is a member of a protected class.

101.    The conduct alleged herein violates Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.* as KeyBank and Carter have engaged in racial harassment and have created, maintained and condoned a hostile work environment with respect to Plaintiff.

102.    The conduct Plaintiff complained of was sufficiently severe or pervasive to alter the terms and conditions of their employment by creating an abusive working environment.

103.    Plaintiff's requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York State Human Rights Law**
**(AGAINST RASKIN FOR AIDING AND ABETTING)**

104.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

105.    Plaintiff, a Black male, is a member of a protected class.

106.    Plaintiff was subjected to a hostile work environment on the basis of his race.

107.    Raskin aided and abetting Carter's unlawful harassment of Plaintiff by permitting Carter to engage in such unlawful activity and by encouraging such behavior.

108.    Raskin's conduct was in violation of The New York Human Rights Law.

109.    Plaintiff's request for relief are set forth below.

110.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York State Human Rights Law**
**(AGAINST CARTER FOR AIDING AND ABETTING)**

111.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

112.    Plaintiff, a Black male, is a member of a protected activity.

113.    Plaintiff was subjected to a hostile work environment on the basis of his race.

114.    Carter aided and abetting Plaintiff's unlawful promotion denial by making a recommendation to Raskin not to promote Plaintiff to Eastchester's Branch Manager Position.

115.    Carter also aided and abetted, Plaintiff's retaliatory transfer by requesting that Plaintiff be transferred to KeyBank's New Rochelle branch.

116.    Carter's conduct was in violation of The New York Human Rights Law.

117.    Plaintiff's request for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A.  That the practices of the Defendants complained of herein be determined and adjudged to be in violation of the rights of the Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.*; and the New York State Human Rights Law, prohibiting retaliation in employment;

B.  That judgment be entered in favor of Plaintiff against Defendants;

C.  That the Plaintiff be awarded compensatory damages where available;

D.  That the Plaintiff be awarded punitive damages;

E.  That the Plaintiff be awarded pre and post judgment interest;

F.  That the Court award Plaintiff attorneys' fees and costs associated with this matter, including but not limited to expert fees' and costs;

G.  That the Plaintiff be awarded all other amounts owed to him;

H.  That the Court retain jurisdiction over Defendants until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law;

Plaintiff further demands that he be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint and to determine liability and damages.

Dated: February 26, 2018                          Respectfully submitted,

<u>/s/   Matthew L. Berman</u>
Robert J. Valli, Jr., Esq
Matthew L. Berman, Esq.
VALLI KANE & VAGNINI LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248

**ATTORNEYS FOR PLAINTIFF**